J. HAYWOOD SAWYER, Trustee, v. WILLIAM H. BRAY.

*Execution—Levy— Officer—Lien—Purchasers.*

1. As against *junior execution creditors*, it is necessary to the validity of a levy of a senior execution upon personal property that the officer should actually take into his possession and retain, either in person or by an agent for that purpose, the property seized, until a sale.

2. As against other persons, including purchasers for value, a levy on personal property, by going to it, so as to have power to take it into his possession if the officer chooses, and endorsing it on his process, will be good, though actual possession may not have been acquired, or having been acquired, the property is left in possession of the debtor.

3. The statute—*The Code,* § 447—does not alter the former law as to what is and what is not a levy; it only relates to the period when the lien of the execution attaches.

CIVIL ACTION, tried before *MacRae, J.,* at Fall Term, 1888, of CURRITUCK Superior Court.

It appeared that one Griggs, being indebted to divers persons, on the 22d day of January, 1886, conveyed a stock of goods in store to the plaintiff in trust to pay the indebtedness therein named. This deed was registered at 4 a. m. on the next day. The plaintiff alleged that he at once took possession and was proceeding to execute the trust, having employed one Snowden as clerk, to assist him, in whose charge he put the property, when the defendant, the Sheriff of Currituck County, in plaintiff's absence, went to Snowden and represented that he had several executions which had been levied before the conveyance to plaintiff, and that he was entitled thereby to the proceeds which had been received from the sale. Snowden paid him the amounts due on the executions, and this action was brought to recover the amount so paid.

The defendant alleged that one Frost, his deputy, had gone with the executions to the store of Griggs, before the conveyance, had then made levies on the goods, and had put them in possession of Snowden, who had theretofore acted as clerk for Griggs, as his (the deputy's) agent, for preservation.

Whether the deputy made such levy, and whether Snowden was constituted his agent, as he alleged, were the principal matters contested on the trial, and as to them there was much conflicting evidence, it being insisted by the plaintiff that the deputy only came to the store, looked around and announced his purpose to make a levy if Griggs, who was then absent, did not make a satisfactory arrangement when he returned; and that if the deputy did endorse a levy on the executions, and had made a levy, he went off, leaving the property in Griggs' possession, and that it was abandoned, or at any rate inoperative against him as a purchaser.

The following issues were submitted to the jury:

"1. Was the plaintiff the owner and entitled to the possession of the goods and money described in the complaint, at the time of the alleged wrongful taking of the same by defendant?

"2. Did the defendant wrongfully take possession and convert the money and goods as alleged in the complaint?

"3. What damages has the plaintiff sustained by reason of such wrongful taking and conversion?"

That portion of the charge of the Court to the jury, material to the questions argued and determined on the appeal, is:

"3. It requires something more than mere declaration to make a levy on personal property. If the Deputy Sheriff went to the store-house and actually took possession of the same or of the goods in it, this was a valid levy, and if he held possession, a deed subsequently registered would be of no

effect, as far as his property in the goods was concerned, and he might hold this possession by an agent appointed by him to take charge and hold for him—of course there could be no such agency and holding for him unless Snowden agreed to take and hold as agent; and even if the deputy did levy, unless he retained the possession either by himself or his agent, the lien of the levy was lost, and the deed of assignment, if made and registered when there was no levy on the property, conveyed a good title to the goods to the plaintiff.

"The testimony on this part is conflicting. Sheriff Bray says that when he went there on the morning of the 23d Snowden was in possession, and declared to him that he was holding under the levy for Deputy Sheriff.

"Snowden testified that the deputy came in and told him that he had executions, walked behind the counter, counted the money, but, according to his testimony, did not take possession, and he, Snowden, never agreed to hold for him.

"Frost, however, testifies that he did go there on the night of the 22d, and took possession and levied and made Snowden his agent, and Snowden agreed to hold for him under the levy.

"4. If there was an actual levy and Snowden was in possession on the morning of the 23d, at the time the agreement was registered, and was holding for the Sheriff, your answer to the first issue should be, No.

"5. Unless a levy was made upon the stock of goods and the money in the drawer, and afterwards, before advertisement and sale, the Sheriff or his deputy or agent in charge of the same allowed the plaintiff to take quiet possession of them, it was an abandonment of the levy, and the plaintiff was the owner, and the response should be, Yes.

"If there was no levy upon the goods and money at the time of the registration of the deed, your response should be, Yes.

"6. It was not necessary that the deputy Sheriff should take into his hands the goods in the store. If he went into

102—6

the store and declared that he levied certain executions then in his hands upon that stock of goods and the money in the drawer, and went and opened the money drawer, and counted the money, and left the goods and money in charge of Snowden, Snowden agreeing to hold under him, this was a levy. But if he simply went in and said he had executions which he wanted to levy, or wanted to see *Griggs* about, or anything of that kind; or even if he said he did levy, and went away without leaving Snowden in possession as his agent to hold the goods, it was no levy, and his simply telling Snowden to hold for him, if he did so tell him, Snowden not agreeing to so hold them, would not make it a levy."

There was a verdict for plaintiff, and from the judgment thereon the defendant appealed, his motion for a new trial for errors in the charge of the Court having been overruled.

*Mr. E. F. Aydlett,* for the plaintiff.
*Mr. W. B. Shaw,* for the defendant.

SHEPHERD, J. Several exceptions were taken to the charge of his Honor, but the one which was chiefly relied upon in this Court, and which is sufficient to dispose of this appeal, is embraced in the instruction that "even if the deputy did levy, unless he retained possession either by himself or his agent, the lien of the levy was lost, and the deed of assignment, if made and registered when there was no levy on the property, conveyed a good title to the goods to the plaintiff"

The ruling of the Court finds apparent support in the language of RUFFIN, C. J., in *Roberts* v. *Scales,* 1 Ired., 88. He says "that the true principle, therefore, is, as we think, that the property of a debtor, as against creditors, ought not by operation of law to be divested and vested in the Sheriff, but by some act as obvious and notorious as the nature and state of the property will permit. That, in the case of ordinary personal chattels like the present, is effected by taking and keeping

possession, and by that only, and therefore it is required. * * * The execution only creates a lien; the taking possession carries the property. Then *e converso* the property which was gained by possession also goes with it." It will be observed that the foregoing case was one where the debtor was permitted to remain in possession after the levy, and it was held that the levy and actual seizure of the goods under a junior execution prevailed. .We cannot believe that the Chief Justice meant to decide that there could be no levy, or that the levy was in law abandoned, unless the goods were retained in the actual possession of the officer or his agent; for he is careful to restrict his general expressions as to what shall constitute a levy by using the significant words " *as against creditors.*" This view is sustained by his opinion in *Mangum* v. *Hamlet*, 8 Ired., 44, where he recognizes the validity of such a levy, by holding that although the Sheriff leaves the property in the possession of the debtor, he has such a special property therein as to sustain an action of trover against one who wrongfully converts it. In that case the defendant moved the Court to " instruct the jury that by leaving the property in the debtor's possession the plaintiff (a constable) abandoned his levies." The Court refused to give the instruction, and the ruling was sustained upon appeal. All doubt upon this point, however, is removed by PEARSON, J., in *Bland* v. *Whitfield*, 1 Jones, 122. He says that " in regard to personal property it is necessary for the officer to go to it, so as to have it in his power to take it into actual possession, if he choses. It is safest for him to do so and carry it away, for then he can hold it against all persons, but it is not necessary for him to do it or for him to touch the property; the levy is perfected by his making the endorsements upon the execution. He may leave the property in the possession of the debtor and take a forthcoming bond, or he may leave it there without any bond, and the effect of the levy is to give him such an interest and possession, in

contemplation of law, as will enable him to bring trespass against any one who interferes with it, except another officer."

So, it clearly appears that what was said in *Roberts* v. *Scales, supra,* referred only to cases where the rights of junior execution creditors were involved. Notwithstanding the plain and emphatic words in the latter part of the above quotations, to the effect that the exception is only applicable to " *another officer,*" the plaintiff insists that he stands upon the same footing as a junior execution creditor who seizes the property while in the possession of the debtor. The distinction between the two in this respect runs through all of our decisions, and we cannot conceive how sec. 447, subsec. 1, of *The Code,* relied upon by the plaintiff, affects it.

RUFFIN, C. J., in *Harding* v. *Spivey,* 8 Ired., 63, in speaking of the preference given a junior execution creditor, where the senior execution creditor prevents his execution from being acted on, says: " That this reasoning has no application to an alienation by the debtor himself, for that, on the other hand, is considered a fraud by the debtor as tending to defeat the process of the law for the recovery of judgment debts, because, from necessity, the rule as to him is *caveat emptor.* And in *Finlay* v. *Smith,* 2 Ired., 225, he says: " Indeed, the law decrees the alienation of property subsequent to the *teste* of a *fieri facias* to be itself fraudulent, since it tends to defeat the process of the law." At common law a *fieri facias* bound the property of the debtor so as to avoid any alienation by him, and this law prevailed in our State until the adoption of the Code of Civil Procedure. Up to that time the simple *issuing* of a writ of *fieri facias* bound the property from its *teste,* and if followed by a levy, it was held sufficient to defeat the rights of innocent purchasers, who bought before the levy. *Grant* v. *Hughes,* 82 N. C., 216; *Harding* v. *Spivey, supra.*

In England the law was changed by 29 Chas. II, so that the lien only commenced from the *delivery* of the writ to the Sheriff. Of this act the Chief Justice, in *Harding* v. *Spivey, supra,* says: "But it may be remembered that that only changes the period to which the lien relates from the *teste* to the delivery of the writ, still creating a lien before the seizure of the property, and therefore still applying the maxim *caveat emptor.*"

In this State we have advanced a step further, and for the purpose of protecting *bona fide* purchasers for value and other execution creditors, we have provided (*The Code,* § 447, subsec. 1) that the lien as to them shall operate only from the levy. This act does not profess to change the existing law as to what shall constitute a levy, nor does it alter in any respect the *character and effect* of the lien acquired by it, as already determined by a long series of decisions in our reports. This rule may work hardship in some cases, and may be a proper subject for additional legislation. So far, it has only been deemed necessary to change the *time* when the lien shall *commence.*

This is an improvement upon the old law, for there is no notoriety in the mere *issuing* of the writ of *fieri facias,* while the actual presence of the Sheriff, his seizure of the property, the making of the endorsement and other attending circumstances are generally sufficient to put purchasers upon their guard.

We are of the opinion that his Honor erred in giving the instruction complained of, and that a new trial should be awarded the defendant.

Error.